The STATE of Ohio, Appellee,

v.

DeARMOND, Appellant.

[Cite as *State v. DeArmond* (1995), 108 Ohio App.3d 239.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–94091.

Decided Dec. 29, 1995.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *William E. Breyer,* Assistant Prosecuting Attorney, for appellee.

*H. Fred Hoefle,* for appellant.

GORMAN, Presiding Judge.

In a single assignment of error, defendant-appellant Carl DeArmond urges us to reverse his conviction and to vacate his plea of guilty to charges of felonious assault upon a police officer and drug abuse entered before the Hamilton County Court of Common Pleas. He contends that before accepting his plea the trial court failed to inform him of his constitutionally guaranteed right to a trial by jury, thus rendering the entry of judgment against him infirm. We disagree. Following a review of the extensive colloquy between the trial court and DeArmond, we hold that DeArmond was meaningfully informed of all his rights and that he knowingly waived them as part of a plea bargain.

The entry of a plea of guilty is a grave decision by an accused to dispense with a trial and allow the state to obtain a conviction without following the otherwise difficult process of proving his guilt beyond a reasonable doubt. See *Machibroda v. United States* (1962), 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473. Entering a plea of guilty is "conclusive. More is not required; the court has nothing to do but give judgment and sentence." *Kercheval v. United States* (1927), 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012, *State v. Bowen* (1977), 52 Ohio St.2d 27, 28, 6 O.O.3d 112, 113, 368 N.E.2d 843, 844, citing *Kercheval* with approval.

■ Recognizing the grave consequences that directly flow from entering such a plea, courts must ensure that a criminal defendant realizes what he is giving up by his course of action. "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford* (1970), 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162, 168, citing *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, with approval; *Parke v. Raley* (1992), 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (reaffirming voluntariness as touchstone of analysis); *State v. Ballard* (1981), 66 Ohio St.2d 473, 479–480, 20 O.O.3d 397, 400–402, 423 N.E.2d 115, 119.

In *Boykin v. Alabama,* 395 U.S. at 242–243, 89 S.Ct. at 1711–1712, 23 L.Ed.2d at 279–280, the United States Supreme Court held that, in order for a reviewing court to determine the propriety of a plea of guilty, the United States Constitution requires the record to show that the defendant both voluntarily *and* knowingly waived certain constitutional rights. These constitutional rights are the privilege against compulsory self-incrimination, the right to a jury trial, and the right to confront accusers. *Id.* at 243, 89 S.Ct. at 1712, 23 L.Ed.2d at 279–

280.[1] The rule of *Boykin* is that a valid plea of guilty requires the defendant to know that by entering a plea of guilty he loses the advantage of these constitutional rights.

The Supreme Court of Ohio, applying various standards of compliance, has followed this rule. In *State v. Caudill* (1976), 48 Ohio St.2d 342, 2 O.O.3d 467, 358 N.E.2d 601, paragraph one of the syllabus, the court required "scrupulous adherence" to the literal dictates of Crim.R. 11(C) when a plea is accepted. In *State v. Ballard*, at paragraph one of the syllabus, the court held that:

"Prior to accepting a guilty plea from a criminal defendant, the trial court must inform the defendant that he is waiving his privilege against compulsory self-incrimination, his right to jury trial, his right to confront his accusers, and his right of compulsory process of witnesses."

The court continued that a trial court will be deemed to have complied with this requirement, even when the exact language of Crim.R. 11(C)[2] is not used, as long as the court personally addresses the defendant and ensures that the *Boykin* and *Ballard* rights are explained in a manner reasonably intelligible to the defendant. *State v. Ballard*, at paragraph two of the syllabus, and 66 Ohio St.2d at 477–478, 20 O.O.3d at 399–400, 423 N.E.2d at 118–119.[3]

---

1. The Supreme Court of Ohio expanded the constitutional requirements to include the right to compulsory process. *State v. Ballard* (1981), 66 Ohio St.2d 473, 20 O.O.3d 397, 423 N.E.2d 115, paragraph one of the syllabus.

2. Crim.R. 11(C) reads in pertinent part:

   "(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:
   "* * *
   "(c) Informing him and determining that he understands that by his plea he is waiving his rights to jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself."

3. When dealing with the nonconstitutional elements of Crim.R. 11(C), the trial court need only "substantially comply" with the rule. *State v. Ballard*, 66 Ohio St.2d at 475, 20 O.O.3d at 398, 423 N.E.2d at 117, citing *State v. Stewart* (1977), 51 Ohio St.2d 86, 5 O.O.3d 52, 364 N.E.2d 1163.

   This court has declared that:
   "The Ohio Supreme Court in *State v. Strawther* (1978), 56 Ohio St.2d 298 [10 O.O.3d 420] 383 N.E.2d 900, held that a written guilty plea in which defendant waived his right to compulsory process was enough to show substantial compliance with Crim.R. 11(C)(2) when defendant could not demonstrate prejudice. *Strawther* was decided prior to *Ballard* and used the substantial compliance/prejudice test set forth in *Stewart, supra*. We believe that *Ballard, supra*, rejected this test for the four constitutional rights listed in Crim.R. 11(C)(2)(c), and that *Strawther* does not control what the trial court must do when it informs the defendant and determines that he understands that he is waiving the four constitutional rights." *State v. Misch* (June 27, 1984), Hamilton App. No. C–830848, unreported, fn. 3, 1984 WL 6667.

When constitutionally mandated rights are at stake, it is beyond cavil that a defendant must be "meaningfully informed" of a constitutionally guaranteed right. The test is "whether * * * the trial court explained or referred to the right in a manner reasonably intelligible to [the] defendant." *State v. Ballard*, 66 Ohio St.2d at 480, 20 O.O.3d at 401, 423 N.E.2d at 120. The trial court's failure to meaningfully inform a defendant that he is waiving these rights by pleading guilty renders the guilty plea constitutionally infirm. *Id.* at 478, 20 O.O.3d at 400, 423 N.E.2d at 118.

The contours of when a court has "meaningfully informed" an accused are unclear. The Ohio Supreme Court itself has found compliance with constitutional mandates despite a trial court's failure to explicitly inform an accused of these rights. In *Ballard*, asserting that matters of reality, and not mere ritual, should be controlling, the court found that the trial court did "meaningfully inform" the appellant he was waiving his right to a trial by jury when, *inter alia*, it declared to the appellant that neither "judge nor jury" could draw any inferences from his refusal to testify. *Id.* at 480–481, 20 O.O.3d at 401–402, 423 N.E.2d at 119–120. In *State v. Billups* (1979), 57 Ohio St.2d 31, 11 O.O.3d 150, 385 N.E.2d 1308, the court affirmed the acceptance of a guilty plea despite appellant's claim the trial court had not informed him of his right to trial by jury. The court held, at the syllabus, that:

"A trial court does not commit prejudicial error under Crim.R. 11(C)(2) by entering a judgment of conviction upon a plea of guilty where the record of the guilty plea proceeding affirmatively demonstrates that: (1) the defendant was represented throughout the proceedings by counsel; (2) the trial court conducted a discussion with the defendant, apprising him of the nature of the charges and the minimum and maximum sentences for each offense, and determining the voluntariness of the submitted plea; (3) *the trial court did not orally inform the defendant of each of his rights because the defendant acknowledged that he heard and understood the court's earlier colloquy with a previous defendant and did not desire his own recitation;* (4) the defendant read and executed in open court, in the presence of defense counsel, a written document which clearly explained defendant's rights and stated that defendant was waiving them by entering his plea of guilty; and (5) the defendant was literate and had obtained a ninth grade education. (*State v. Caudill* [ (1976) ], 48 Ohio St.2d 342 [2 O.O.3d 467, 358 N.E.2d 601], limited.)" (Emphasis added.)

---

In view of the Ohio Supreme Court's holding in *Ballard*, the "substantial compliance" doctrine of *State v. Stewart* and *State v. Strawther* does not apply to the case at bar. The application of these cases is limited to situations where the omission is of rights that are specified in Crim.R. 11(C)(2), but which are not constitutional rights. *State v. Thomas* (1990), 67 Ohio App.3d 127, 132, 586 N.E.2d 198, 201.

■ Here, the trial court did not affirmatively inform DeArmond of his right to a trial by jury. A *Boykin* right is implicated requiring the heightened standard of inquiry set forth in *Ballard.* Our inquiry, however, is not limited solely to the information provided to the defendant by the trial court. We examine the totality of the circumstances surrounding the plea. "A defendant may learn of information not relayed to him by the trial court from other sources, such as his attorney." *Riggins v. McMackin* (C.A.6, 1991), 935 F.2d 790, 795 (construing Ohio Crim.R. 11); see, also, *North Carolina v. Alford,* 400 U.S. at 29, 91 S.Ct. at 163, 27 L.Ed.2d at 166, fn. 3.

■ Here, despite the trial court's failure to explicitly state to DeArmond that he was waiving his right to a trial by jury, the record demonstrates that DeArmond's plea was knowingly and voluntarily given.

The record reflects that an indictment was returned against DeArmond charging him with two counts of felonious assault and with one count of drug abuse with a specification of a prior offense of violence.

The record affirmatively demonstrates that DeArmond, then twenty-two years of age with a ninth grade education, was represented by competent, experienced counsel throughout the proceedings; that he admitted to police that the drugs seized at the time of the arrest were his and that he did resist his arrest by police officers; that DeArmond executed a plea form which explicitly states, "I am waiving my constitutional rights to jury trial"; and that his counsel signed the form as well.

The record also reflects that the trial court conducted an extensive colloquy with DeArmond, apprising him fully and asking him if he understood the following: the nature of the charges he faced and the minimum and maximum sentences for each offense, the limited opportunities provided for parole and probation, the terms of the plea bargain reached with the prosecuting attorney, which included the dismissal of one count of felonious assault and of the specification to the drug-abuse count, and that he could be sentenced immediately.

The trial court then asked DeArmond whether he understood and willingly signed the plea form, whether his counsel had explained the form and the rights he was waiving, whether he had recently used any drug or alcohol, whether he was an American citizen, and whether any other party had made any other promises to him about his plea bargain. The trial court then stated, "You have a right to go to trial. You will be giving up that right if you plead guilty. So let's talk about what rights you are giving up." The court then explicitly informed him of each of the *Boykin/Ballard* rights, except the right to a trial by jury. The assistant prosecuting attorney gave a brief recitation of the facts, including the

two grams of crack cocaine found on DeArmond and the twenty-five stitches and twenty-one staples required to close the razor wounds received by the officer attempting to subdue DeArmond.

DeArmond proceeded to enter a plea of guilty. He waived a presentence investigation and asked to be sentenced immediately. His counsel informed the trial court that:

"[DeArmond] recognizes what he's facing here. However, he is twenty-two years old at this time, and all I can say is that he is—it was his—the guilty plea was done at his instance. And I would ask the Court to take all of that into consideration.

"And he does ask for the mercy of the Court. It's an extremely serious charge as it is, and anything that occurs here is going to be serious, and he knows that."

The court then entered sentence as appears of record.

Accordingly, we hold that on the facts of this case, despite the failure to explicitly inform him of his right to a jury trial, the record makes manifest that DeArmond was meaningfully informed of the rights he was waiving and that his plea was entered into voluntarily and with a full understanding of the grave consequences that directly flow from entering such a plea.

We agree with the Supreme Court of Ohio that "[t]o hold otherwise would be to elevate formalistic litany of constitutional rights over the substance of the dialogue between the trial court and the accused. This is something we are unwilling to do." *State v. Ballard,* 66 Ohio St.2d at 480, 20 O.O.3d at 401–402, 423 N.E.2d at 120.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

MARIANNA BROWN BETTMAN, J., concurs.

PAINTER, J., dissents.

PAINTER, Judge, dissenting:

I dissent for the reasons stated in the first half of the majority opinion, which is an excellent discussion of the reason for remand.

*Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, lists a bundle of rights that a defendant waives when pleading guilty. Among that list of rights is the right to jury trial. A defendant must knowingly, intelligently, and voluntarily waive his right to jury trial for such waiver to be effective. A court must review the totality of the circumstances to determine whether this standard has been met. *Boykin, supra.*

Crim.R. 11(C) sets up a bright-line test requiring the trial court to specifically, and orally, inform defendants of their rights listed in *Boykin*. The failure of trial courts to follow Crim.R. 11(C) results in numerous cases in appellate courts, and frustrates the defendant's interest in a voluntary and knowing plea, and society's interest in the resolution of cases and the finality of judgments. However, contending that a defendant could knowingly, intelligently, and voluntarily waive a right without being specifically informed of the right by the trial court, the Supreme Court of Ohio seemed to back off this standard in *State v. Billups* (1979), 57 Ohio St.2d 31, 11 O.O.3d 150, 385 N.E.2d 1308. In *Billups*, a defendant who was *not* specifically informed of a right listed in *Boykin* could still be held to have waived the right knowingly, intelligently, and voluntarily when represented by counsel and when the defendant read and executed the written plea of guilty.

However, recognizing that the *Billups* standard made a gigantic inferential leap that a defendant had not only read, but *understood* the plea form, the Supreme Court of Ohio implicitly overruled the broad *Billups* interpretation of Crim.R. 11(C) in *State v. Ballard* (1981), 66 Ohio St.2d 473, 20 O.O.3d 397, 423 N.E.2d 115. In *Ballard*, the court held that at a minimum, the trial court must explain each right listed in *Boykin* in a "reasonably intelligible" manner. The explanation does not need to be a "rote recitation" of Crim.R. 11(C) verbatim, but it does need to be calculated to ensure that the defendant understands each right that he is waiving. See *Boykin, supra; Ballard, supra*. In *State v. Sturm* (1981), 66 Ohio St.2d 483, 20 O.O.3d 403, 422 N.E.2d 853, the trial court had advised the defendant of all *Boykin* rights except that of confronting one's accusers, and the Ohio Supreme Court reversed, citing *Ballard* and holding that the failure to inform the defendant of a *Boykin* right renders the plea fatally defective. *Sturm* is the current state of the law in Ohio. I do not discern any difference between *Sturm* and the case before us.

The trial court failed in this case to mention the right to jury trial. From a review of the record, I find that the only possible manner that DeArmond was told of his right to jury trial was by reading and executing the plea form.

Applying the *Ballard* standard to the facts in the case at bar, I do not see how this qualifies as a "reasonably intelligible" explanation of DeArmond's right to jury trial. There is simply no way to know whether DeArmond understood what he read.

The majority would hold that the plea form was sufficient not only to inform DeArmond of his right to jury trial, but also to ensure that he understood the implications of waiving that right. This result is in direct contravention of *Ballard* and Crim.R. 11(C). The duty of ensuring that the defendant knows and understands his rights falls squarely on the trial court. The trial court must make sufficient inquiry to satisfy itself that the waiver of such a right is made

knowingly, intelligently, and voluntarily. Here, the trial court simply did not discuss the issue of a jury trial *at all*—thus, it is *impossible* that the *Ballard* and *Sturm* standard was reached.

Though I sympathize with the desire to uphold a plea when the trial judge simply forgot one word ("jury") in an otherwise faultless hearing, bad cases make bad law. Terrible law is being made today. I am more than trepidatious about the next constitutional right which might be omitted. Therefore, I respectfully dissent.